# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY BUTLER FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:14CV112 SNLJ |
| | ) | |
| CORIZON MEDICAL SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff (registration no.527557), an inmate at Southeast Correctional Center ("SECC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $18.94. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $94.69, and an average monthly balance of $22.13. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $18.94, which is 20 percent of plaintiff's average monthly deposit.

### 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the

Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

### The Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights.[1] Named as defendants are: Corizon Medical Services; Michael Hakala (Doctor); and Ian Wallace (Warden, SECC). Plaintiff brings his claims against defendants "individually."

In his complaint for monetary damages, plaintiff asserts that on August 7, 2013, he was assaulted by another inmate in the main walkway by the handball court. Plaintiff claims that this area is not regularly patrolled by officers, and that the area does not have an officer assigned "during movement windows." Plaintiff states that it is a "blind spot" within the institution where inmates are known to attack and that this information is known to defendant Wallace.

Plaintiff claims that after he was attacked, he was removed from his work assignment in the Puppies for Parolees Program and placed in a maximum detention unit during an investigation into the altercation. Plaintiff asserts that he was injured during the attack, and he was initially told that he needed stitches but that because Doctor Hakala was out of the building,

---

[1] Plaintiff states generally in the first paragraph of his "Statement of Claims" that he is bringing this lawsuit pursuant to the Americans with Disabilities Act and the Rehabilitation Act, as well as 42 U.S.C. § 1983. However, plaintiff has not made any claims pursuant to the ADA or the Rehabilitation Act. Rather, all of his claims fall under 42 U.S.C. § 1983 and state law. Accordingly, the Court will presume that plaintiff was mistaken in his identification of these two additional statutes in the first paragraph of his complaint.

he was made to wait until he could arrive.  He claims that Doctor Hakala never arrived at the prison to take care of his medical needs, thus, he was provided with butterfly bandages instead of stitches.  He asserts that after he was bandaged, defendant Wallace came to see him and told him that he would be "released [from medical] as soon as medically cleared."

Plaintiff claims that after he was released from medical, he was taken to the maximum security unit.  He alleges that he had been residing in the maximum security unit for six days when he was taken to a hearing before a committee of persons relating to the incident.  He states that he was told at the hearing that the investigation was ongoing.  Plaintiff states that the next day he was told by his Functional Unit Manager that he had the choice of be assigned to administrative segregation during the investigative process or being assigned to protective custody, because it was "too hot" to return him to population.  Plaintiff states that approximately four days later he was placed in protective custody.  Plaintiff asserts that during the month he was in protective custody he asked several times to be placed back into his prior unit so that he could return to his work assignment in the Puppies for Parolees Program.  He was told on several occasions that during the investigation he needed to wait to return to his unit.

After being in protective custody for a little more than a month, plaintiff states that he was moved to a new "house" in the general population.  He states that he asked to be moved to his prior "house," or unit, but he was told that the unit was currently full.  Several weeks later, when an opening in his old unit came about, plaintiff was moved to that unit.  Nonetheless, plaintiff complains that he was not immediately assigned back to the Puppies for Parolees Program.  Although plaintiff makes general complaints about his failure to return to this program, he has not included these complaints in his official claims in this case.

Plaintiff makes three actual claims against the three defendants in this lawsuit.  He asserts that Corizon has a "policy" of "restricting, if not outright denying, follow-up care ordered by a

doctor when such care is expensive." Plaintiff additionally asserts that defendant Hakala acted with deliberate indifference when he denied follow-up care by failing to provide him with stitches when he suffered an injury after the attack from another inmate. Plaintiff assert that the "butterfly strips" were simply not good medical care.

Last, plaintiff asserts that defendant Wallace acted unlawfully in failing to protect him from an assault by another prisoner. It appears that plaintiff's claims against defendant Wallace fall under both the Eighth Amendment and Missouri state law.

## Discussion

Plaintiff's bald assertions regarding an alleged "policy" by Corizon of denying medical care when such care is too expensive is simply not supported by the facts he has alleged in his complaint and is not entitled to an assumption of truth. *Iqbal*, 129 at 1950-51. Rather, plaintiff's assertion is nothing more than a "legal conclusions" or a "[t]hreadbare recital of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. As such, plaintiff's claim against Corizon will be dismissed.

Plaintiff's claim against defendant Hakala, for deliberate indifference to his serious medical needs will also be dismissed. "To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, an inmate must prove that he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs." *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999). For a claim of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct. *Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003). "A serious medical need is

one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Cambreros v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995). Plaintiff's mere disagreement with defendant Hakala's medical opinion regarding whether or not he needed stitches is simply not enough to rise to the level of a deliberate indifference claim. Moreover, plaintiff admits that defendant Hakala did eventually examine him after his attack and reaffirm that he did not need more than the butterfly bandages that he originally prescribed. Accordingly, the Court will dismiss plaintiff's claim against defendant Hakala for deliberate indifference.

The Court finds, however, that plaintiff has provided enough factual assertions, in his complaint and supporting documents attached to his complaint, *see* Fed.R.Civ.P.10, to bring his state and federal claims against defendant Wallace for failure to protect him from harm by another inmate. To state a failure-to-protect claim, a plaintiff is required to allege that (1) defendants are aware of facts from which they could infer the existence of a substantial risk of serious harm to him, (2) they actually drew the inference, and (3) they failed to take reasonable steps to protect him. *See Farmer v. Brennan*, 511 U.S. 825, 836-38, 844 (1994). Assault by a fellow inmate constitutes "serious harm." *Jensen v. Clarke*, 94 F.3d 1191, 1198 (8th Cir. 1996). A single incident of violence may, in some circumstances, support a failure-to-protect claim. *See Young v. Selk*, 508 F.3d 868, 870-73 (8th Cir. 2007) (discussing potential for substantial risk where inmate told officials of cellmate's threats, requested to be removed from cell immediately, said it was an emergency, and was subsequently attacked). Plaintiff has alleged that the hallway which he was attacked in is known throughout the prison as a "blind spot" that is not appropriately supervised by correctional personnel. Plaintiff claims that Warden Wallace knew of the "blind spot" and failed to provide proper correctional personnel in that hallway, thus

leading to his attack. Accordingly, plaintiff has properly alleged a failure to protect claim against defendant Wallace.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $18.94 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee within thirty (30) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendant Ian Wallace. Defendant Wallace shall be served through the Court's waiver of service agreement with the Missouri Attorney General's Office.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendant Wallace shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendant Corizon Medical Services or Michael Hakala because, as to these defendants, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5B: Prisoner Standard.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 17th day of December, 2014.

                                             STEPHEN N. LIMBAUGH, JR.
                                             UNITED STATES DISTRICT JUDGE