UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY BUTLER FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:14-CV-112 SNLJ |
| | ) | |
| IAN WALLACE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendant Ian Wallace to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. #20]. For the reasons stated below, defendant's motion to dismiss will be granted, and the case will be dismissed.

**Background**

Plaintiff, Anthony Butler Ford, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. Named as defendants in his **amended complaint**[1] are: Corizon Medical Services; Michael Hakala (Doctor); and Ian Wallace (Warden). Plaintiff, who is currently incarcerated at Southeast Correction Center ("SECC") brings his claims against defendants in their individual and official capacities.

In his amended complaint for monetary damages, plaintiff asserts that on August 7, 2013, he was assaulted by another inmate in the main walkway by the handball court. Plaintiff claims that this area is not regularly patrolled by officers, and that the area does not have an officer

---

[1]The amended complaint was filed on February 19, 2015. *See* Doc. #19. Attached to plaintiff's amended complaint are copies of plaintiff's Informal Resolution Requests ("IRRs"), as well as defendant's responses to the grievance procedure. These documents are accepted as part of the Court record pursuant to Fed.R.Civ.P.10(c).

assigned "during movement windows." Plaintiff states that it is a "blind spot" within the institution where inmates are known to attack and that this information is known to defendant Wallace.

Plaintiff claims that after he was attacked, he was removed from his work assignment in the Puppies for Parolees Program and placed in a maximum detention unit during an investigation into the altercation. Plaintiff asserts that he was injured during the attack, and he was initially told that he needed stitches but that because Doctor Hakala was out of the building, he was made to wait until he could arrive. He claims that Doctor Hakala never arrived at the prison to take care of his medical needs, thus, he was provided with butterfly bandages instead of stitches. He asserts that after he was bandaged, defendant Wallace came to see him and told him that he would be "released [from medical] as soon as medically cleared."

Plaintiff claims that after he was released from medical, he was taken to the maximum security unit. He alleges that he had been residing in the maximum security unit for six days when he was taken to a hearing before a committee of persons relating to the incident. He states that he was told at the hearing that the investigation was ongoing. Plaintiff states that the next day he was told by his Functional Unit Manager that he had the choice of be assigned to administrative segregation during the investigative process or being assigned to protective custody, because it was "too hot" to return him to population. Plaintiff states that approximately four days later he was placed in protective custody. Plaintiff asserts that during the month he was in protective custody he asked several times to be placed back into his prior unit so that he could return to his work assignment in the Puppies for Parolees Program. He was told on several occasions that during the investigation he needed to wait to return to his unit.

After being in protective custody for a little more than a month, plaintiff states that he was moved to a new "house" in the general population. He states that he asked to be moved to his

prior "house," or unit, but he was told that the unit was currently full. Several weeks later, when an opening in his old unit came about, plaintiff was moved to that unit. Nonetheless, plaintiff complains that he was not immediately assigned back to the Puppies for Parolees Program. Although plaintiff makes general complaints about his failure to return to this program, he has not included these complaints in his official claims in this case.

Plaintiff makes three actual claims against the three defendants in this lawsuit. He asserts, without any factual information whatsoever, that Corizon has a "policy" of "restricting, if not outright denying, follow-up care ordered by a doctor when such care is expensive." Plaintiff additionally asserts, also in a conclusory manner, that defendant Hakala acted with deliberate indifference when he denied plaintiff follow-up care by failing to provide him with stitches after the attack from another inmate. Plaintiff generally assert that the "butterfly strips" were simply not good medical care. Plaintiff does not state, however, that he suffered any injury from receiving the butterfly strips instead of receiving stitches.

Last, plaintiff asserts that defendant Wallace acted unlawfully in failing to protect him from an assault by another prisoner. It appears that plaintiff's claims against defendant Wallace fall under both the Eighth Amendment and Missouri state law.

The Court reviewed plaintiff's original complaint pursuant to 28 U.S.C. § 1915, for frivolousness, maliciousness and for failure to state a claim on December 17, 2014. In the Court's Memorandum and Order issued on that date, plaintiff's claims against Corizon for an alleged "policy" of denying medical care were dismissed as nothing more than an unsupported legal conclusion. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009).

Plaintiff's claim against defendant Hakala for deliberate indifference to his medical needs was also dismissed, as plaintiff's mere disagreement with defendant Hakala's medical opinion of

whether or not plaintiff needed stitches could not state an Eighth Amendment claim. *See Estate of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir. 1995).[2]

The Court did, however, allow plaintiff's claim for failure to protect against a serious risk of harm against defendant Wallace to go forward.

## Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint so as to eliminate claims "which are fatally flawed in their legal premises . . . thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir.2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 555 U.S. at 570). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotations omitted). On a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the non-moving party. *See* Fed.R.Civ.P. 12(b)(6); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court may only consider the pleading itself and documents referenced therein. Moreover, if a pleading contains sufficient factual matter, accepted as true, to show potential entitlement to relief, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal. *See, e.g., McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000).

---

[2]The Court notes that plaintiff has not changed his assertions with regard to defendant Corizon or defendant Hakala in his amended complaint, therefore, the Court will adopt the reasoning espoused in its prior Memorandum and Order and find that these allegations are subject to dismissal pursuant to 28 U.S.C. § 1915. *See* Memorandum and Order and Order of Partial Dismissal issued on December 17, 2014, Doc. #5 and #6. As plaintiff has not properly exhausted his administrative remedies with respect to these claims, they are also subject to dismissal pursuant to the reasoning espoused below.

**Discussion**

Defendant Wallace contends that this action should be dismissed pursuant to Rule 12(b)(6), because plaintiff failed to properly exhaust his administrative remedies when he filed his Informal Resolution Request ("IRR") in an untimely fashion.

Under 42 U.S.C. § 1997e(a), a prisoner may not bring an action under §1983 "until such administrative remedies as are available are exhausted." "An inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller,* 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)).

In order for a Missouri prisoner to satisfy this exhaustion requirement, he must avail himself of the administrative grievance process established by the Missouri Department of Corrections. To initiate this process, an inmate must file an IRR within fifteen (15) days of the date of the incident giving rise to the IRR. If the inmate is dissatisfied with the response to his IRR, he can file an Offender Grievance within seven (7) working days of receiving the response. If the inmate is dissatisfied with the response to his Grievance, he can file a Grievance Appeal within seven (7) days of receiving that response. The failure to file timely appeal will result in the appeal being considered abandoned. Only after the inmate receives a response to his Appeal is the administrative grievance procedure exhausted. *Wewerka v. Roper*, case no. 4:09CV1973 CDP, 2010 WL 4628093, at *2 (E.D. Mo. Nov. 8, 2010). *See also Foulk v. Charrier*, 262 F.3d 687, 694 (8th Cir. 2001).

Defendant asserts that plaintiff's IRR was untimely because he filed it on October 17, 2014, or seventy-one (71) days after the events giving rise to his complaint on August 7, 2013. Plaintiff responds, in a conclusory fashion, that he was "estopped" from filing grievances, which

therefore made his administrative remedies unavailable to him. However, plaintiff has not alleged any specific facts showing that his remedies were actually unavailable to him. *See, e.g, Lyon v. Vande Krol*, 305 F.3d 806 (8th Cir. 2002). Rather, plaintiff's recitation of events shows that he simply waited to see if he would be "given everything back" without the need to file an IRR to enforce his rights by utilizing the administrative grievance process. Unfortunately, the "wait and see approach," does not qualify as "estoppel" under the law, and the PLRA exhaustion requirement demands compliance with the agency's deadlines. Plaintiff's failure to adhere to the fifteen-day (15) filing deadline deprives him of his right to bring the instant allegations before this Court. The instant complaint will be dismissed as a result of plaintiff's failure to properly exhaust his administrative remedies.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Wallace's motion to dismiss [Doc. #20] is **GRANTED**.

**IT IS HEREBY ORDERED** that defendant Wallace's motion to stay discovery [Doc. #21] is **DENIED AS MOOT**.

A separate Order of Dismissal will accompany this Memorandum and Order.

Dated this 8th day of June, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE